ABRAMS FENSTERMAN, LLP
Zachary D. Kuperman, Esq. (ID # 013222012)
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201
(718) 238-5300
zkuperman@abramslaw.com

*Attorneys for Defendant*
*HH 88 Centennial LLC*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PISCATAWAY CENTENNIAL DEVELOPER LLC,<br><br>Plaintiff,<br><br>v.<br><br>HH 88 CENTENNIAL LLC,<br><br>Defendant. | Case No.: 3:22-cv-5253<br><br><br>**NOTICE OF REMOVAL** |

Defendant, HH 88 Centennial LLC ("Defendant"), by and through its attorneys, Abrams Fensterman, LLP, hereby removes the civil action entitled *Piscataway Centennial Developer LLC v. HH 88 Centennial LLC*, Docket No. MID-L-004144-22 ("State Action"), originally filed and now pending in the Superior Court of the State of New Jersey, from said court and to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and in support thereof states as follows:

**THE STATE ACTION**

1.    On or about August 16, 2022, plaintiff, Piscataway Centennial Developer LLC ("Plaintiff") commenced the State Action in in the Superior Court of the State of New Jersey, Law Division, Middlesex County, by filing a Verified Complaint dated August 16, 2022 ("Complaint") and civil case information sheet ("Information Sheet").  A true and correct copy of said Complaint,

with exhibits, and with Information Sheet, is annexed hereto as Exhibit A.  The Complaint and

Information Sheet constitute all of the process and pleadings filed in the State Action.

2.    On or about August 16, 2022, Plaintiff, by its attorneys, sent the said Complaint

and Information Sheet by email to Defendant's attorneys.

3.    On or about August 16, 2022, Defendant received a copy of the Complaint.

4.    On or about, August 19, 2022, Defendant consented to accept service of process by

email.

5.    On or about August 25, 2022, Defendant's attorney signed an acceptance of service

of process upon Defendant without waiver.  *See* Exhibit B.

6.    The Court filed Track Assignment Notice dated August 17, 2022.  See Exhibit C.

7.    A copy of the docket for the State Action is annexed hereto as Exhibit D.

8.    No other proceedings or filings have occurred in the State Action.

## BASIS FOR REMOVAL JURISDICTION

9.    Defendant is removing the Sate Action pursuant to 28 U.S.C. §§ 1332, 1441, and

1446 based on diversity of citizenship which exists here because the Plaintiff is a citizen of a

different state from the Defendant and the amount in controversy exceeds $75,000.  *See* U.S.C. §

1332(a)(1).  Where diversity jurisdiction exists, as it does here, removal is appropriate pursuant to

U.S.C. § 1441.

10.    Here, both the Plaintiff and Defendant are limited liability companies.  *See* Compl.

¶¶ 1 and 2.  The citizenship of a limited liability company is determined by the citizenship of the

company's members.  *See SodexoMAGIC, LLC v. Drexel Univ*., 24 F.4th 183, 202 (3d Cir. 2022).

The state under which limited liability company was formed and its principal place of business are

irrelevant to the company's citizenship for diversity jurisdiction purposes.  *See Lincoln Ben. Life*

*Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). Therefore, diversity of citizenship exists in this case if all of Plaintiff's members are citizens of states different from all of Defendant's members. Here, all of Plaintiff's members are citizens of New Jersey, and all of Defendant's members are citizens of New York.

**a. <u>Defendant's Citizenship</u>**

11. At all relevant times, Defendant is and has been a limited liability company.[1]

12. At all relevant times, all of Defendant's members are and have been citizens of the State of New York.

13. At all relevant times, Defendant's members are and have solely consisted of Shloimy Reichman. In other words, Mr. Reichman is and has been Defendant's sole member.

14. Mr. Reichman is an individual. At all relevant times, Mr. Reichman is and has been a resident and domiciliary of Brooklyn, New York, and thus is a citizen of the State of New York.

15. Accordingly, at all relevant times, all of Defendant's members are and have been citizens of the State of New York and therefore Defendant is a citizen of the State of New York.

**b. <u>Plaintiff's Citizenship</u>**

16. Upon information and belief, at all relevant times, Plaintiff is and has been a limited liability company. *See* Compl. ¶ 1.

17. Upon information and belief, at all relevant times, all of Plaintiff's members are and have been citizens of the State of New Jersey.

18. Upon information and belief, at all relevant times, Plaintiff's sole member is and has been Maurice Zekaria.

---

[1] While Defendant was formed under the laws of the state of New Jersey and has a principal place of business in Brooklyn, New York, the state of formation and place of business are irrelevant to the question of the company's citizenship. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).

3

19.    Alternatively, upon information and belief, at all relevant times, all of Plaintiff's members are and have been: (i) Piscataway Centennial Manager LLC, a New Jersey limited liability company having a principal place of business in New Jersey, and (ii) Piscataway Centennial Investors LLC, a New Jersey limited liability company having a principal place of business in New Jersey.

20.    Upon information and belief, at all relevant times, all of the members of Piscataway Centennial Manager LLC are and have been: (i) Maurice Zekaria, (ii) Leon Zekaria, and (ii) the Morrid D. Levy Irrevocable Trust.

21.    Upon information and belief, Maurice Zekaria is an individual and at all relevant times is and has been a resident and domiciliary of Oakhurst in the State of New Jersey and therefore is a citizen of the State of New Jersey.

22.    Upon information and belief, Leon Zekaria is an individual and at all relevant times is and has been a resident and domiciliary of Oakhurst in the State of New Jersey and therefore is a citizen of the State of New Jersey.

23.    Upon information and belief, at all relevant times, the Morris D. Levy Irrevocable Trust is and has been a New Jersey trust having a principal place of business in the State of New Jersey and having as its trustee David M. Levy.

24.    Upon information and belief, David M. Levy is an individual and at all relevant times is and has been a resident and domiciliary of Lakewood or West Orange in the State of New Jersey and is therefore a citizen of the State of New Jersey.

25.    Upon information and belief, at all relevant times, all of the members of Piscataway Centennial Investor LLC are and have been: (i) Edison Investor Associates LLC, (ii) Allen Saka, (iii) SMS Family Investment LLC, (iv) Raymond Saka, and (v) Jeffrey Saka.

26.    Upon information and belief, at all relevant times, Edison Investor Associates LLC is and has been a New Jersey limited liability company having a principal place of business in the State of New Jersey, all of the members of which are and have been citizens of the State of New Jersey, residing and domiciled in Oakhurst in the State of New Jersey.

27.    Upon information and belief, Allen Saka is an individual and at all relevant times is and has been a resident and domiciliary of Lakewood in the State of New Jersey and is therefore a citizen of the State of New Jersey.

28.    Upon information and belief, at all relevant times, SMS Family Investment LLC is and has been a New Jersey limited liability company having a principal place of business in the State of New Jersey, all of the members of which are and have been citizens of the State of New Jersey, residing and domiciled in Oakhurst in the State of New Jersey.

29.    Upon information and belief, Raymond Saka is an individual and at all relevant times is and has been a resident and domiciliary of Oakhurst in the State of New Jersey and therefore is a citizen of the State of New Jersey.

30.    Upon information and belief, Jeffrey Saka is an individual and at all relevant times is and has been a resident and domiciliary of Deal in the State of New Jersey and is therefore a citizen of the State of New Jersey.

31.    Alternatively, upon information and belief, at all relevant times, one of Plaintiff's members is and has been Paramount Realty Inc., a New Jersey corporation having a principal place of business in Lakewood, New Jersey, which is therefore, pursuant to 28 U.S.C. §§ 1331(c)(1), a citizen of the State of New Jersey.

32.    Accordingly, upon information and belief, at all relevant times, all of Plaintiff's members are and have been citizens of the State of New Jersey and therefore Plaintiff is a citizen

of the State of New Jersey.

33.     Accordingly, because Plaintiff is a citizen of the State of New Jersey, and Defendant is a citizen of the State of New York, the parties are completely diverse.

**c.   <u>Amount in Controversy</u>**

34.     Plaintiff's Complaint alleges breach of contract claims related to a certain Purchase and Sale Agreement dated on or about May, 2022 ("PSA"), which agreement concerns, among other things, the purchase and sale of certain real property known as and located at 88 Centennial Avenue, Piscataway, New Jersey ("Property").

35.     Under the PSA, the Purchase Price, as defined therein, for the Property is $8,000,000.  Further, under the PSA, the Deposit, as defined therein, is $500,000.

36.     In the Complaint, Plaintiff seeks, among other things, recovery of the Deposit.  See Compl. ¶¶ 8, 14, 53, and 55.  Therefore, the amount in controversy is at least $500,000, exclusive of interests and costs.

37.     Accordingly, the amount in controversy is greater than $75,000.

38.     Because the parties are completely diverse, and the amount in controversy exceeds the jurisdictional threshold of $75,000, this Court has jurisdiction based on diversity of citizenship and thus this action may be properly removed under 28 U.S.C. §§ 1332 and 1441.

<u>PROCEDURAL COMPLIANCE</u>

39.     This Notice of Removal is timely under 28 U.S.C. § 1446 because it is being filed within 30 days of Defendant's receipt of the Complaint.  The time for Defendant to answer the Complaint has not yet expired.

40.     This Notice of Removal is filed less than one year after commencement of the State Action.

41.     The United States District Court for the District of New Jersey embraces the place where the State Action was pending.  The United States District Court for the District of New Jersey embraces Middlesex County, New Jersey, which was the county in which the State Action was pending, and thus venue is proper pursuant to 28 U.S.C. §§ 1441 and 112(c).

42.     All process, pleadings, orders, and filings of the State Action are attached to this Notice of Removal.

43.     Written notice of the filing of this Notice of Removal will be served upon Plaintiff's counsel by email and by electronic filing in the State Action.

44.     A true and correct copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of New Jersey, Law Division, Middlesex County pursuant to 28 U.S.C. § 1446(d).

45.     Defendant has not previously sought removal of the State Action.

46.     By filing this Notice of Removal, Defendant does not waive any defenses which may be available to it.

WHEREFORE, the State Action should be removed to the United States District Court for the District of New Jersey.

Dated: Brooklyn, New York
       August 26, 2022

                                        ABRAMS FENSTERMAN, LLP

                              By: _____
                                        Zachary D. Kuperman, Esq.
                                        1 Metrotech Center, Ste. 1701
                                        Brooklyn, New York 11201
                                        718-215-5300
                                        zkuperman@abramslaw.com

                                        *Attorneys for Defendant*
                                        *HH 88 Centennial LLC*

# EXHIBIT A

# Civil Case Information Statement

## Case Details: MIDDLESEX | Civil Part Docket# L-004144-22

**Case Caption:** PISCATAWAY CENTENNIA L DEVELOP
VS HH 88 CENTENNI

**Case Initiation Date:** 08/16/2022

**Attorney Name:** SETH MICHAEL ROSENSTEIN

**Firm Name:** ANSELL GRIMM & AARON PC

**Address:** 365 RIFLE CAMP RD

WOODLAND PARK NJ 07424

**Phone:** 9732479000

**Name of Party:** PLAINTIFF : PISCATAWAY CENTENNIAL
DEVELOP

**Name of Defendant's Primary Insurance Company**

(if known): None

**Case Type:** REAL PROPERTY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: PISCATAWAY CENTENNIAL DEVELOP?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
        **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
        **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO   **Title 59?** NO   **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

08/16/2022
Dated

/s/ SETH MICHAEL ROSENSTEIN
Signed

**ANSELL GRIMM & AARON, P.C.**
Joshua S. Bauchner, Esq. (#051242013)
Seth M. Rosenstein (#156862015)
365 Rifle Camp Road
Woodland Park, NJ 07424
(973) 247-9000
jb@ansellgrimm.com
smr@ansellgrimm.com

*Attorneys for Plaintiff*

| | |
|---|---|
| PISCATAWAY CENTENNIAL DEVELOPER LLC, | SUPERIOR COURT OF NEW JERSEY MIDDLESEX COUNTY - LAW DIVISION CIVIL ACTION |
| Plaintiff, | |
| v. | DOCKET NO.: MID-L- |
| HH 88 CENTENNIAL LLC, | **VERIFIED COMPLAINT AND JURY DEMAND** |
| Defendant. | |

Plaintiff, Piscataway Centennial Developer LLC, by way of this Complaint against Defendant HH 88 Centennial LLC, says:

## PARTIES

1.     Plaintiff Piscataway Centennial Developer LLC ("Plaintiff") is a limited liability company organized under the laws of the State of New Jersey with an address of 1195 Route 70 East, Lakewood, New Jersey 08701.

2.     Defendant HH 88 Centennial LLC ("Defendant") is a limited liability company organized under the laws of the State of New Jersey with an address of c/o Abrams Fensterman, LLP, 1 Metrotech Center, Suite 170, Brooklyn, New York 11201.

1

## FACTS

3.      In or around May, 2022, Plaintiff and Defendant entered into a Purchase and Sale Agreement (the "Agreement") whereby Defendant agreed to purchase certain real property located at 88 Centennial Avenue, Piscataway, New Jersey 08854 (the "Property") from Plaintiff.  A true and correct copy of the Agreement is annexed hereto as **Exhibit A**.

4.      Pursuant to the Agreement, the parties were obligated to close title on or before fifteen (15) days after the expiration of a certain "Review Period," as defined in the Agreement.

5.      Accordingly, closing was to take place on or before August 1, 2022.

6.      Complying with the Agreement, Plaintiff delivered to the title company, in escrow, the documents necessary to convey title to the property in accordance with the requirements of the Agreement.

7.      Closing did not take place on or before August 1, 2022, despite Plaintiff having taken all steps required to close.

8.      Section 15(a) of the Agreement states that in the event of Defendant's default under the Agreement, "[Plaintiff is] entitled to retain the [$500,000.00] Deposit (with any interest) as liquidated damages…"

9.      On August 3, 2022, Plaintiff's counsel issued correspondence to Defendant's counsel (i) advising that Defendant defaulted under the terms of the Agreement, (ii) directed the escrow agent, Riverside Abstract, to wire the $500,000.00 deposit to Plaintiff's counsel, and (iii) advising that in the event Defendant objected to releasing the deposit, Plaintiff would initiate an action for declaratory judgment and all attorneys' fees and costs attendant to bringing the action in accord with Section 27(f) of the Agreement.  A true and correct copy of the August 3, 2022 correspondence is annexed hereto as **Exhibit B**.

2

10.     On August 5, 2022, Defendant's counsel issued correspondence to Plaintiff's counsel, asserting for the first time that the Property is encumbered by purported development and use restrictions, and attempting to serve a Title Notice in accord with Section 5(b) of the Agreement.  A true and correct copy of the August 5, 2022 correspondence is annexed hereto as **Exhibit C**.

11.     Also on August 5, 2022, Defendant's counsel issued correspondence to Plaintiff's counsel, asserting that a certain lease for the Property was not terminated in accord with the Agreement, among other things.   A true and correct copy of the second August 5, 2022 correspondence is annexed hereto as **Exhibit D**.

12.     On August 9, 2022, Plaintiff's counsel issued correspondence to Defendant's counsel, advising that Plaintiff is ready, willing and able to close on the transaction and remains able to unilaterally terminate the subject lease in accord with the Agreement -- and will do so prior to closing.  A true and correct copy of the August 9, 2022 correspondence is annexed hereto as **Exhibit E.**

13.     Plaintiff's counsel further stated that:

a.   Plaintiff has endeavored to mitigate its damages by not unilaterally terminating the subject lease as Plaintiff is entitled to do until it is confirmed that Defendant will proceed in accord with its obligation to close;

b.   Defendant had ample time to review title work for the Property, and was permitted a period through and including "5:00 PM EST on the last day of the Review Period (the "Title Date") to notify [Plaintiff], in writing, of the existence of any encumbrances and defects in title which are not Permitted Encumbrances and not otherwise excepted in this Agreement (the "Title Notice")."  *See* Agreement Section 5(b).

c.   If Defendant failed to deliver a Title Notice to Seller by 5:00 PM EST on the Title Date, the title contingency is deemed to be of no further force or effect and all of the matters of record as of the Title Date are deemed "Permitted Encumbrances; and

3

d.  As the Title Date was July 25, 2022, and no **_timely_** Title Notice was provided, to the extent the unrecorded development and use restrictions constitute matters of title for which Section 5 of the PSA would apply, Defendant waived any challenge to title and its purported unwillingness to close on that basis is a nullity, at best.

14.    On August 12, 2022, Defendant's counsel issued correspondence ignoring the plain language of the Agreement and the parties' course of dealing, levying frivolous assertions and demanding that the deposit be released to Defendant -- compelling Plaintiff to file the instant action.

## <u>COUNT ONE</u>
(Breach of Contract)

15.    Plaintiff repeats and re-alleges every allegation set forth in the previous sections, as if set forth at length herein.

16.    Defendant entered into the Agreement with Plaintiff to purchase the Property.

17.    Plaintiff performed all activities and obligations required to sell the Property to Defendant, including but not limited to, confirming that it may unilaterally terminate a certain lease with Wawa, executing all documents required to close title, and delivering closing documents to the closing agent Riverside Abstract.

18.    Defendant breached the Agreement by failing to close title to the Property, and asserting that Plaintiff defaulted under the Agreement despite no such default existing.

19.    Plaintiff has and continues to suffer losses and damages as a direct result of Defendant's breaches.

**WHEREFORE,** Plaintiff demands judgment:

a)  Awarding the following damages in amount to be determined at trial:

a.  Actual damages;

b.  Punitive damages;

4

    c.  Interest;

    d.  Costs of suit;

    e.  Attorneys' fees; and

b)  For such other and further relief the Court deems just and proper.

## <u>COUNT TWO</u>
(Breach of the Implied Covenant of Good Faith and Fair Dealing)

20.    Plaintiff repeats and re-alleges every allegation set forth in the previous sections, as if set forth at length herein.

21.    The Agreement between Plaintiff and Defendant is a contract.

22.    Defendant violated reasonable standards of good faith and fair dealing by negotiating and entering into the Agreement to purchase the Property, while simultaneously failing to abide by the Agreement's terms and asserting that Plaintiff thereunder despite no such default existing.

23.    As a direct and proximate result of Defendant's breaches of the implied covenant of good faith and fair dealing, Plaintiff has and continues to suffer significant damages.

**WHEREFORE,** Plaintiff demands judgment:

a)  Awarding the following damages in amount to be determined at trial:

    a.  Actual damages;

    b.  Punitive damages;

    c.  Interest;

    d.  Costs of suit;

    e.  Attorneys' fees; and

b)  For such other and further relief the Court deems just and proper.

72569283

## COUNT THREE

(Declaratory Relief pursuant to N.J.S.A. 2A:16-51, *et seq.*)

52.     Plaintiff repeats and re-alleges every allegation set forth in the previous sections, as if set forth at length herein.

53.     An actual controversy has arisen and now exists because Defendant asserts that it is not in default under the Agreement, and objects to Riverside Abstract releasing the $500,000.00 deposit to Plaintiff in accord with the Agreement.

54.     Moreover, Defendant frivolously argues that it is entitled to return of the deposit despite its express breaches of the Agreement, asserting that Plaintiff violated the Agreement.

55.     Plaintiff seeks a declaratory judgment that Defendant defaulted under the Agreement, Plaintiff did not default under the Agreement, and the $500,000.00 deposit be released to Plaintiff in accord with the Agreement.

56.     Without a judicial declaration, Plaintiff will be unable to fully understand its rights under the Agreement.

57.     The actual controversy presented to this Court is ripe for adjudication and is suitable for judicial determination.

58.     There is an existing legal dispute between the parties regarding a discrete issue.

**WHEREFORE,** Plaintiff requests the Court issue a declaratory judgment finding pursuant to N.J.S.A. 2A:16-51, *et seq.*, that:

   (a)     Defendant defaulted under the Agreement by failing to close title to the Property on or before August 5, 2022;

   (b)     Plaintiff is not in default under the Agreement;

   (c)     The $500,000.00 deposit held in escrow by Riverside Abstract is to be released to Plaintiff in accord with the Agreement;

6

72569283

      (d)     For interest;

      (e)     Attorneys' fees and costs of suit; and

      (f)     For such other and further relief the Court deems just and proper.

Dated: Woodland Park, New Jersey      ANSELL GRIMM & AARON, P.C.
       August 16, 2022

                                     *s/ Seth M. Rosenstein*
                                       Seth M. Rosenstein, Esq.
                                       *Attorneys for Plaintiff*

## **CERTIFICATION OF NO OTHER PARTIES/ACTIONS**

      I, Seth M. Rosenstein, Esq., attorney for the Plaintiff in the within action, hereby certify that to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or any arbitration proceeding, and no other action or arbitration proceeding is contemplated.  Further, I know of no other party who should be joined in this action.

Dated: Woodland Park, New Jersey
     August 16, 2022                *s/ Seth M. Rosenstein*
                                      Seth M. Rosenstein, Esq.

## **RULE 1:38-7 CERTIFICATION**

      I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

Dated: Woodland Park, New Jersey
     August 16, 2022                *s/ Seth M. Rosenstein*
                                      Seth M. Rosenstein, Esq.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues subject to trial.

7

## <u>DESIGNATION OF TRIAL COUNSEL</u>

Pursuant to Rule 4:25-4, Seth M. Rosenstein, Esq., of Ansell Grimm & Aaron, P.C. is

hereby designated as trial counsel for the within matter.

Dated:  Woodland Park, New Jersey
        August 16, 2022                          *s/ Seth M. Rosenstein*
                                                 Seth M. Rosenstein, Esq.

8

72569283

## **VERIFICATION**

I, Maurice Zekaria, certify that I am the Managing Member of Piscataway Centennial Developer LLC, Plaintiff in the foregoing Verified Complaint. I have read the preceding Verified Complaint and know the contents thereof, and the same is true of my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
Maurice Zekaria

Dated: August 16, 2022

Sworn and subscribed to
before me this 16 day
of August, 2022.

_____
NOTARY PUBLIC

LISA VASSALLO
Commission # 2316604
Notary Public, State of New Jersey
My Commission Expires
July 17, 2024

9

72569283

# EXHIBIT "A"

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") is entered into as of the _____ day of May , 2022 (the "Effective Date") by and between **PISCATAWAY CENTENNIAL DEVELOPER LLC**, a New Jersey limited liability company with an address of 1195 Route 70 East, Lakewood, New Jersey 08701 ("Seller"), and HH 88 Centennial LLC with an address of c/o Abrams Fensterman, LLP, 1 Metrotech Center, Suite 170, Brooklyn, New York 11201 ("Purchaser").

## W I T N E S S E T H :

WHEREAS, Seller is the owner of certain real property located at 88 Centennial Avenue, Piscataway, New Jersey as more specifically described on <u>Exhibit A</u> annexed hereto and made a part hereof (the "Property"); and

WHEREAS, Seller desires to sell the Property to Purchaser, and Purchaser desires to purchase the Property from Seller, all in the manner and upon and subject to the terms and conditions set forth in this Agreement;

NOW, THEREFORE, for and in consideration of the mutual covenants and promises herein contained, the parties hereto agree as follows:

1.  **AGREEMENT TO SELL AND PURCHASE; DESCRIPTION OF PROPERTY.** The Seller agrees to sell and convey to the Purchaser, and the Purchaser agrees to purchase from the Seller, all in the manner and upon and subject to the terms and conditions set forth in this Agreement, the Property, subject only to the Permitted Encumbrances (as defined in <u>Section 2</u> hereof), together with the following property and/or rights adjacent or pertaining thereto:

TOGETHER ALSO with all right, title and interest of Seller, if any, in and to (i) all improvements, buildings and structures or similar items located upon the Property (collectively, the "Improvements"); (ii) the land in the bed of any public street, road or avenue, open or proposed, in front of or adjoining the Property, to the center line thereof; (iii) any rights of way, easements, appurtenances, alleys, water, gas and mineral rights, gores and strips of land adjoining or appurtenant to the Property or used in conjunction therewith; (iv) any award made or to be made in lieu of any of the foregoing and any unpaid award for damage to the Property or the Improvements; (v) all contracts or any other property, property right or interest pertaining and belonging to the Property or Improvements and presently owned by Seller; (vii) all variances, permits, licenses, sewer hookup permits and approvals, consents and approvals issued by any governmental or quasi-governmental authority which are necessary for the construction, ownership, use, operation and/or occupancy of the Property, if any (collectively, the "Permits"); and (viii) such other rights, interests and properties as may be specified in this Agreement to be sold, transferred, assigned or conveyed by Seller to Purchaser.

All of the above enumerated property, rights and interests to be sold pursuant to this Agreement are, together with the real property, hereinafter collectively called the "Property."

091431.000044.75353131

The real property is currently subject to that certain lease dated July 23, 2019 with Wawa, Inc., as amended (the "Wawa Lease"). The Wawa Lease is not a part of the Property being conveyed by this Agreement and shall be terminated with a written acknowledgement from Wawa, Inc. and Seller after the expiration of the Review Period provided that Purchaser does not elect to terminate this Agreement.  Termination of the Wawa Lease shall be a condition to Closing.  In the event the Wawa Lease is not terminated as of the Closing Date (provided however that the termination may have a termination date that is effective only upon the Closing Date), Purchaser shall have the option to extend the Closing Date or terminate this Agreement and receive a refund of the Deposit.

2.  **DEED AND TITLE.** The Property is to be conveyed to Purchaser by a Bargain and Sale Deed with Covenants against Grantors Acts (the "Deed"), and said Deed shall convey title thereto free from encumbrances (the "Permitted Encumbrances"), except:

(a)  Provisions of existing building, zoning, and subdivision laws, restrictions and regulations of all governmental authorities having jurisdiction thereof, but not violations thereof, and all zoning variances and special exceptions, if any;

(b)  Real Estate taxes for the current fiscal year as are not yet due and payable on the date of the delivery of the Deed;

(c)  Any liens for municipal betterments assessed but not due as of the date of the Closing; and

(d)  Those title and survey matters which Purchaser accepts pursuant to Section 6 of this Agreement.

3.  **PURCHASE PRICE AND PAYMENT.** The agreed purchase price for the Property is EIGHT MILLION HUNDRED THOUSAND AND 00/100 DOLLARS ($8,000,000.00) (the "Purchase Price"), which shall be payable as follows:

(a)  On the signing of this Agreement, Purchaser shall deposit the sum of $500,000.00 (the "Deposit") by electronic wire transfer of immediately available federal funds to an account designated by Riverside Abstract, 3839 Flatlands Avenue, Suite 208, Brooklyn, NY 11234 ("Escrow Agent").  The deposit shall be non-refundable effective as of the date of this Agreement unless (i) the Wawa Lease is not terminated prior to Closing, (ii) if Seller cannot convey title in accordance with Paragraph 5; or (iii) the Property is condemned in accordance with Section 12(b) of this Agreement.  These are the only circumstances pursuant to which Purchaser shall be entitled to a return of the Deposit.

(b)  At Closing, by wire transfer, bank check or certified check, in the amount of the Purchase Price less the Deposit and any applicable adjustments.

4.  **REVIEW PERIOD; CONDITION OF PROPERTY AT CLOSING; PROPERTY DOCUMENTS.**

(a)  Purchaser shall have a period commencing on the Effective Date and ending at 5:00 PM on the date which is sixty (60) days from the Effective Date (the "Review Period") within which to have the Property inspected, surveyed and evaluated by an environmental, engineer

-2-

and lenders. Purchaser agrees that any inspection, test or other study or analysis of the Property shall be performed at Purchaser's expense and in strict accordance with this Agreement and all applicable laws, regulations or municipal ordinances. Purchaser acknowledges and agrees that the right to conduct these inspections shall not give rise to any right to claim that Deposit shall be returned to Purchaser. Seller shall allow Purchaser and such inspectors reasonable access to the Property upon at least twenty-four (24) hours advance notice to conduct such tests and investigations. Notwithstanding the foregoing, Purchaser shall not cause any borings, wells or other physically invasive investigations of the Property ("Invasive Investigations") to be conducted without the prior written consent of Seller   In the event Purchaser shall request permission to cause any Invasive Investigations to be conducted at the Property, Purchaser shall first deliver to Seller for prior written approval a plan depicting the location of any and all planned Invasive Investigations. Should Purchaser terminate this Agreement or if the Closing does not occur due to a default hereunder by Purchaser, Purchaser agrees to provide Seller with copies of all written reports that Purchaser obtains regarding the Property. The provisions of this Section shall survive any termination of this Agreement for one (1) year.

(b)     Purchaser agrees at its own expense to promptly repair or substantially restore the Property to its condition existing prior to the inspection or testing, or, at Seller's option, to reimburse Seller for any reasonable repair or restoration costs, if any inspection or test requires or results in any damage to, or alteration of, the condition of any portion of the Property. The obligations set forth in this Section shall survive the termination of this Agreement one (1) year.

(c)     Purchaser agrees that, in making any physical or environmental inspections or tests of the Property, Purchaser or Purchaser's agents (a) will carry not less than Two Million Dollars ($2,000,000) comprehensive general liability insurance with contractual liability endorsement which insures Purchaser's indemnity obligations hereunder, and, upon request of Seller, Purchaser will provide Seller with written evidence of same, and (b) will restore promptly any physical damage caused by the inspections or tests. Purchaser shall give Seller reasonable prior notice of its intention to commence the conduct of any inspections or tests, and Seller reserves the right to have a representative present provided such rights shall not unreasonably delay or interfere with any said inspections or tests. Any inspections and testing shall be at Purchaser's expense. Purchaser agrees (which agreement shall survive Closing or termination of this Agreement) to indemnify, defend, and hold Seller free and harmless from any loss, injury, damage, claim, lien, cost or expense arising out of a breach of the foregoing agreements by Purchaser in connection with such due diligence at the Property, or otherwise from the exercise by Purchaser or its agents or representatives of the right of access under this Section.

(d)     In the event that Purchaser, after performing the above-referenced inspections, examinations, and/or investigations, is not fully satisfied with the condition or any aspect of the Property, in its sole discretion, or if Purchaser otherwise does not want to proceed with the purchase of the Property for any reason or no reason at all, then Purchaser shall have the right to terminate this Agreement by written notice to the Seller, received by Seller at any time prior to the expiration of the Review Period, and thereupon this Agreement shall be void with no recourse to the parties except for those provisions which expressly survive termination of this Agreement. Should Purchaser terminate the Agreement as set forth in this Section, Purchaser agrees to provide Seller with copies of all written reports that Purchaser receives regarding the Property during the Review Period. For the avoidance of doubt, Purchaser's right to conduct any inspections is being given solely for

-3-

091431.000044.75353131

informational purposes only and nothing herein shall entitle Purchaser to a return of the Deposit if Purchaser elects to terminate this Agreement.

(e)    Seller shall deliver to Purchaser within five (5) days after the date hereof to the documents listed on Exhibit B attached hereto (collectively, the "Property Documents") to the extent any are actually possessed and available for delivery by Seller. Seller makes no representations or warranties as to the truth, accuracy or completeness of any materials, data or other information supplied to Purchaser in connection with Purchaser's inspection of the Property (e.g., that such materials are complete, accurate or the final version thereof, or that all such materials are in Seller's possession). It is the parties' express understanding and agreement that such materials are provided only for Purchaser's convenience in making its own examination and determination as to whether it wishes to purchase the Property, and, in doing so, Purchaser shall rely exclusively on its own independent investigation and evaluation of every aspect of the Property and not on any materials supplied by Seller. Purchaser expressly disclaims any intent to rely on any such materials provided to it by Seller in connection with its inspection and agrees that it shall rely solely on its own independently developed or verified information.

(f)    Unless Seller specifically and expressly otherwise agrees in writing, the terms of this transaction and all information regarding the Property of whatsoever nature made available to it by Seller or Seller's Representatives ("Proprietary Information") is confidential and shall not be disclosed to any other person except those assisting Purchaser with the transaction, or Purchaser's attorneys, accountants, lender or investors, if any, and then only upon Purchaser making such person aware of the confidentiality restriction and procuring such person's agreement to be bound thereby. In the event the purchase and sale contemplated hereby fails to close for any reason whatsoever, Purchaser agrees to return to Seller, or cause to be returned to Seller all Proprietary Information. Further, Purchaser agrees not to use or allow to be used any Proprietary Information for any purpose other than to determine whether to proceed with the contemplated purchase, or if same is consummated, in connection with the operation of the Property post-Closing. Notwithstanding any other term of this Agreement, the provisions of this Section shall survive the Closing or the termination of this Agreement.

(g)    In the event that Purchaser elects not to terminate this Agreement during the Review Period and proceeds with this transaction as contemplated herein, Seller shall terminate the Wawa Lease as a pre-condition to the Closing; provided, however that the termination date for such termination may be the Closing Date.

5.    **TITLE**.

(a)    Fee simple title to the Property shall be conveyed at the Closing free and clear of all liens, encumbrances and easements affecting title except for the Permitted Encumbrances (as defined above) and those which are permitted as provided in this Section.

(b)    Purchaser shall have until 5:00 PM EST on the last day of the Review Period (the "Title Date") to notify Seller, in writing, of the existence of any encumbrances and defects in title which are not Permitted Encumbrances and not otherwise excepted in this Agreement (the "Title Notice"). If Purchaser fails to deliver a Title Notice to Seller on or before 5:00 P.M. EST on the Title Date, then except for any new title defects that be disclosed on a pre closing continuation

-4-

search (i) this contingency shall be deemed to be of no further force or effect and (ii) all of the matters of record as of the Title Date (other than Seller's Monetary Liens (as hereinafter defined), which Seller's Monetary Liens Seller shall be responsible for paying and having released) shall be deemed to be "Permitted Encumbrances" as defined above. If Purchaser delivers a Title Notice to Seller on or before 5:00 P.M. EST on the Title Date, then Seller shall have a period of five (5) Business Days following the receipt of the Title Notice (or if such fifth (5th) day following Seller's receipt of the Title Notice is not a Business Day, then on the next succeeding Business Day) (such period the "Title Cure Period") to either cure such defects (with written notice delivered to Purchaser of Seller's completion of such cure together with evidence of the same reasonably satisfactory to Purchaser) or to expressly agree in writing to cure such defects on or before the Closing hereunder (any such title matter which Seller agrees to cure on or before the Closing herein called, a "Seller's Title Matter"). Seller shall have no obligation whatsoever to expend or agree to expend any funds in excess of 10% of the Purchase Price to cure any title objection (other than the discharge of monetary liens encumbering the Property, including without limitations, mortgages, judgements, tax liens, lis pendens, and mechanics liens relating to work performed at the Property, all of which Seller shall be responsible for paying and having released of record at the Closing (all of the foregoing items set forth in this sentence herein collectively, the "Seller's Monetary Liens") and Seller's Title Matters which Seller shall also be responsible for having released of record at the Closing and provide written evidence to Purchaser of such payment(s)). If, within the Title Cure Period, Seller does not either cure such title objections set forth in the Title Notice (with written notice delivered to Purchaser of Seller's completion of such cure together with evidence of the same reasonably satisfactory to Purchaser) and/or expressly agree in writing to cure such title defects on or before the Closing, then (x) Purchaser may thereupon elect to terminate this Agreement, by providing written notice to Seller within five (5) days after the expiration of the Title Cure Period, in which event this Agreement shall become null and void, all obligations of both parties pursuant to this Agreement shall immediately cease or Purchaser, or (y) Purchaser may accept such title as Seller is able to convey without reduction of the Purchase Price and otherwise subject to the remaining terms of this Agreement. Unless Purchaser shall terminate this Agreement as provided herein, except for Seller's Monetary Liens, all matters of record as of the earlier of (i) the date Purchaser delivers a Title Notice to Seller or (ii) the Title Date with respect to which Purchaser fails to give a Title Notice, or with respect to which a timely Title Notice is given but Seller fails to undertake an express obligation to cure as provided above, excluding Seller's Monetary Liens, shall be deemed approved by Purchaser as "Permitted Encumbrances" hereunder.

(c)     Seller shall not permit any encumbrance of the Property between the Effective Date and Closing (any such encumbrance made between the Effective Date and Closing herein called a "Subsequent Encumbrance"). Purchaser shall notify Seller in writing (the "Second Title Notice") on or before the date of Closing of any items which encumber the Property and which became of record after the earlier of (i) the date Purchaser delivered a Title Notice to Seller or (ii) the Title Date. If Purchaser delivers a Second Title Notice to Seller, Seller shall have the right to delay the Closing for up to thirty (30) days to cure any objections set forth in the Second Title Notice; provided, however, Seller shall have no obligation whatsoever to cure any such encumbrances set forth in the Second Title Notice other than Seller's Monetary Liens all of which Seller shall be obligated to cure. If at the Closing (as the same may be extended as provided for herein) Seller is unable to convey the Property free and clear of the title defects set forth in the Second Title Notice, then (x) Purchaser may thereupon elect to terminate this Agreement by giving written notice to Seller and Escrow Agent shall immediately return the Deposit to Purchaser without the need of

further notice or instruction from Seller or Purchaser; (y) Purchaser may accept such title as Seller is able to convey without the reduction of the Purchase Price, subject to the remaining terms of this Agreement; or (z) if Seller is unable to convey title to the Property as required hereby due to the existence of a Subsequent Encumbrance, any Seller's Monetary Liens or any Seller's Title Matter, then Purchaser shall be entitled to the remedies available to Purchaser for a default by Seller.

(d)    If Purchaser terminates this Agreement in accordance with this Section, then, the Deposit shall be delivered to Seller unless (i) the title defect was otherwise not disclosed in Seller's Owner's Policy of Title Insurance Np. O-9301-003403922 issued by Highpoint Abstract, L.P., as agent for Stewart Title Guaranty Company dated June 22, 2021 (the "Seller's Title Policy") and (ii) Seller is unable or unwilling to cure such title defect, in which case the Deposit shall be returned to Purchaser and thereafter, all further rights and obligations of the parties shall cease and terminate without any further liability of either party to the other (except those obligations which are specifically provided in this Agreement to survive such termination).    Notwithstanding the foregoing, Seller shall be obligated to satisfy and discharge the mortgages disclosed in the Seller's Title Policy including exceptions 28-33.

### 6.    AS-IS PURCHASE.

(a)    Except as otherwise expressly provided in this Agreement or any of Seller's Conveyance Documents (as defined below), the Property is being sold in an "AS IS" condition and "WITH ALL FAULTS" as of the date of this Agreement and on a "with all defects" basis, without representation, warranty or covenant, express, implied or statutory, of any kind whatsoever, including, without limitation, representation, warranty or covenant as to condition (structural, environmental, mechanical or otherwise), past or present use, construction, development, lease performance, investment potential, tax ramifications or consequences, income, compliance with law, habitability, tenancies, merchantability or fitness or suitability for any purpose, all of which are hereby expressly disclaimed.  Without limiting the generality of the foregoing and except to the extent expressly set forth in this Agreement, Purchaser acknowledges that except as may be expressly set forth herein, Seller has made no representations, warranties or covenants as to the compliance of the Property with any federal, state, municipal or local statutes, laws, rules, regulations or ordinances, including, without limitation, those pertaining to construction, rent control, building and health codes, land use (or permits issued in connection therewith), zoning, lead paint, urea formaldehyde, asbestos, Hazardous Materials, pollutants, contaminants, other environmental matters or any other matter. Purchaser agrees, acknowledges and represents that Purchaser is entering into this Agreement and shall perform all of its obligations hereunder and consummate the transactions contemplated by this Agreement solely in reliance on and as a result of Purchaser's own investigations and efforts (including Seller's production of documents, Purchaser's inspection of the Property and such other investigations, examinations and inspections as Purchaser has chosen to make or has made including, without limitation, inquiries of the tenants, contracting parties, permitting parties and others in connection with the Property) and at Purchaser's sole risk, cost and expense, including, without limitation, the risk that Purchaser's inspections and inquiries thereof and such other investigations, examinations and inspections may not reveal any or all adverse or existing conditions, aspects or attributes thereof.

(b)    Purchaser acknowledges that pursuant to this Agreement, Purchaser has been or shall be afforded a Review Period in which it shall have the opportunity for full and complete

-6-

investigation, examination and inspection of the Property and all matters associated therewith. Purchaser acknowledges that this paragraph was a negotiated part of this Agreement and serves as an essential component of consideration for the same, and, except as provided for herein, the Purchase Price has been negotiated to eliminate all claims, whether known or unknown, present or future, relating to the condition of the Property, and all aspects and attributes thereof. Subject to the terms of this Agreement, as of Closing, Purchaser shall, on behalf of itself and all those claiming by or through it, irrevocably and unconditionally release Seller from all past, present or future claims, whether or not presently known, which could be brought by Purchaser; provided, however, the foregoing release shall not apply (i) to Seller's breach of any of the covenants, representations and warranties of seller set forth in this Agreement, (ii) to any post closing obligations, including without limitation, indemnification obligations of Seller pursuant to the terms of this Agreement, or to any covenants, representations and warranties contained in the closing documents delivered pursuant to this Agreement, (iii) to any third party claims relating to or arising out of acts or omissions of Seller with respect to the Property occurring prior to the Closing, and (iv) for any act of Seller in connection with Purchaser's purchase of the Property that constitutes fraud, wrongful, intentional, tortious or criminal acts of Seller. The release described above shall survive the Closing and transfer of title and shall be binding upon Purchaser and its successors and assigns.

7. **INTENTIONALLY OMITTED.**

8. **PRIOR TO CLOSING.** Until the Closing, Seller covenants as follows:
   (a)     Seller shall cause the Property to be insured against fire and other hazards covered by extended coverage endorsement and comprehensive public liability insurance against claims for bodily injury, death and property damage occurring in, on or about the Property in the amounts and under the policies now maintained.

   (b)     Seller shall operate and maintain the Property in accordance with Seller's past practices. Seller shall not, without the prior written consent of Purchaser to be granted or withheld in Purchaser's sole judgment, change or attempt to the change (or consent to any change in) the zoning or other legal requirements or existing entitlements applicable to the Property.

   (c)     Seller shall enter into only those third party contracts or leases which are necessary to carry out its obligations under this Section and which shall be cancelable on thirty (30) days written notice. If Seller enters into any such lease or contract, Seller shall cause such lease or contract to be terminated on or prior to the Closing Date, and such lease or contract shall not be assumed by Purchaser.

   (d)     From the Effective Date to the Closing Date, Seller shall not enter into any service contract which will be binding upon Purchaser after the Closing without Purchaser's prior written consent.

   (e)     Seller shall not execute, record or enter into any document or instrument which grants or conveys a lien, security interest or encumbrance against the Property without the prior written consent of Purchaser in Purchaser's sole judgment except if the same will be removed or released upon the Closing.

   (f)     Provided Purchaser does not terminate this Agreement during the Review Period, upon conclusion of theReview Period, Purchaser shall terminate the Wawa Lease as a

-7-

091431.000044.75353131

condition to and prior to Closing.

9.    **REPRESENTATIONS OF SELLER**.  Notwithstanding, but not in limitation of, anything contained herein, Seller hereby warrants and represents to Purchaser that:

(a)    The Seller is a limited liability company organized, validly existing and in good standing under the laws of the State of New Jersey;

(b)    The Seller has full right, power and authority to make, execute, deliver and perform this Agreement and to sell and convey the Property in accordance with the terms and provisions of this Agreement; subject to an existing agreement by and between Seller and a third party which Seller agrees to terminate upon execution of this Agreement.  If for any reason Seller is unable to terminate same, this Agreement shall be deemed null and void and the parties shall have no further liability to each other;

(c)    All necessary action has been taken by Seller to authorize execution, delivery, performance and payment under this Agreement and no consent, approval or other action is required from any third party in connection with the sale of the Property;

(d)    This Agreement when executed and delivered by Seller and Purchaser will constitute the valid and binding Agreement of the Seller;

(b)    There are no leases, licenses or other occupancy agreements in effect as of the date hereof affecting the Property or any part thereof to which Seller is a party or by which Seller is bound, other than the Wawa Lease which shall be terminated as a condition to the Closing Date;

(c)    There are no persons employed by Seller at the Property for which Purchaser will have any liability after the Closing;

(d)    Seller has not received any written notice that there are any planned or pending, assessments or impact fees for public improvements made or charged against the Property which remain unpaid or which will remain unpaid at the Closing.

(e)    Seller has not received written notice of any condemnation action pending or being contemplated with respect to all or any part of the Property.

(f)    There are no service contracts affecting the Property or any part thereof to which Seller is a party that will remain after the Closing

Seller may, at any time by providing written notice to Buyer (an "Exception Notice"), amend any representations or warranties set forth above in this Section 9 which becomes untrue or incorrect or which Seller becomes aware that the same is untrue or incorrect after being made, such representation or warranty shall be deemed to be amended as described in the Exception Notice. If (i) any representations or warranties set forth above in this Section 9 was known to Seller to be untrue or incorrect when made, (ii) any representations or warranties set forth above in this Section 9 was not known to Seller to be untrue or incorrect when made but has a "material and adverse effect on the operations or value of the Property", or (iii) any representation and warranty is amended pursuant to an Exception Notice and such amendment has a "material and adverse effect on the

-8-

operations or value of the Property", as Buyer's sole remedy, Buyer shall have the right to terminate this Agreement by giving written notice to Seller within ten (10) days after receipt of the Exception Notice whereupon this Agreement shall be terminated and neither party shall have any obligations hereunder except those which expressly survive a termination of this Agreement. If Buyer fails to timely deliver a notice of such termination, then Buyer shall be deemed to have waived its right to terminate this Agreement. To the extent necessary, the Closing Date shall be extended in order to give Buyer the ten (10) Business Days referred to in this paragraph.

The representations and warranties of Seller set forth in Section 9, as updated by Seller, shall survive Closing for a period of six (6) months after Closing. After Closing, no claim for a breach of any representation or warranty of Seller shall be actionable or payable (a) if the breach in question results from or is based on a condition, state of facts or other matter which was known to Buyer prior to Closing, (b) unless the valid claims for all such breaches collectively under this Agreement aggregate One Hundred Thousand and No/100 Dollars ($100,000.00) or more, in which event the full amount of such valid claims shall be actionable, up to but not exceeding the amount of the Cap (as defined below), and (c) unless written notice containing a description of the specific nature of such breach shall have been given by Buyer to Seller prior to the expiration of said ninety (90) day period. Seller shall not be liable to Buyer to the extent Buyer's claim may be satisfied from any insurance policy. As used herein, the term "Cap" shall mean One Hundred Thousand and 00/100 ($100,000.00) Dollars. In no event shall Seller's aggregate liability to Buyer for any and all breaches of any representation or warranty of Seller in this Agreement or any other agreement or document provided by Seller pursuant to this Agreement exceed the amount of the Cap; provided, however, that the liability of Seller with respect to Section 5.3 of this Agreement shall not be applicable to the Cap, and Buyer hereby waives and disclaims any right to damages or compensation for any and all such breaches in excess of the Cap.

Seller makes no representations or warranties as to whether the Property contains asbestos, radon or any other hazardous materials or harmful or toxic substances. Further, to the extent that Seller has provided to Purchaser information from any inspection, engineering or environmental reports concerning asbestos, radon or any hazardous materials or harmful or toxic substances or any compliance by Seller with respect thereto, Seller makes no representations or warranties with respect to the accuracy or completeness, methodology of preparation or otherwise concerning the contents of such reports.

10.   **REPRESENTATIONS OF PURCHASER**. Notwithstanding, but not in limitation of, anything contained herein, Purchaser hereby covenants, warrants and represents to Seller that:

(a)   Purchaser is limited liability company organized, validly existing and in good standing under the laws of the State of New York;

(b)   All necessary action has been taken by Purchaser to authorize execution, delivery, performance and payment under this Agreement;

(c)   No petition in bankruptcy (voluntary or otherwise), assignment for the benefit of creditors, or petition seeking reorganization or arrangement or other action under Federal or state bankruptcy or insolvency laws is pending against or contemplated by Purchaser;

-9-

091431.000044.75353131

(d)  Purchaser has or shall have prior to Closing sufficient cash on hand or other sources of immediately available funds to enable it to make all deposits required hereunder and to remit full payment of the Purchase Price and consummate the transactions contemplated by, and pursuant to the terms of, this Agreement;

(e)  This Agreement when executed and delivered by Seller and Purchaser will constitute the valid and binding Agreement of the Purchaser;

(f)  Purchaser has not received any written notice of any actions, suits or proceedings pending or threatened or asserted against or involving Purchaser which could have a material negative impact on Purchaser's purchase of the Property.

The foregoing representations and warranties made by Purchaser in this Section are true and correct as of the date hereof, and shall be repeated as true and correct as of the date of Closing, and such representations and warranties shall survive the Closing for twelve (12) months but not thereafter. If, for any reason, Purchaser cannot repeat any of said representations and warranties as of the date of Closing, or if Purchaser is in default hereunder because of the breach of any one or more of said representations and warranties, then, notwithstanding anything herein to the contrary, Seller may terminate this Agreement and be entitled to the rights and remedies set forth in <u>Section 15(a)</u> hereof for a default under this Agreement by Purchaser.

11.  **CLOSING DATE.**  Payment of the Purchase Price and the closing hereunder (the "Closing") shall take place pursuant to a closing on or before fifteen (15) days after the expiration of the Review Period (the "Closing Date") by escrow deliveries or at such other time and place as may be agreed upon in writing by Seller and Purchaser.  Purchaser shall have the unilateral right to extend the Closing Date by five (5) additional days on written notice to Seller.

12.  **CASUALTY / CONDEMNATION**.

(a)  The risk of loss or damage to the Property by fire or other casualty or cause beyond Seller's control (collectively, "Damage") in advance of the Closing Date shall be borne by Seller.  Upon any such Damage, Purchaser, in its sole discretion, shall either (i) terminate this Agreement, in which event the parties hereto shall have no further rights or obligations hereunder, except as otherwise provided herein, (ii) require Seller to repair such Damage within a reasonable time thereafter, not to exceed one hundred eighty (180) days or (iii) reduce the Purchase Price by an amount equivalent to the cost to repair such Damage as determined by quoted estimates from reputable contractors selected by Seller and approved by Purchaser.  If Purchaser elects option (ii) or (iii), then Seller hereby reserves all rights and claims it may have against insurance companies and other third parties.  Alternatively, Purchaser shall have the right to proceed to Closing with an assignment of all of Seller right, title and interest in and to all insurance policies and claims on existing insurance policies and against third parties.

(b)  If, prior to the Closing, ten percent or more of the Property or any material access to the Property is taken under power of eminent domain, notice of which shall be provided to Purchaser, Purchaser may elect to terminate this Agreement by giving written notice of its election to Seller within fourteen (14) days after receiving notice of such taking and Escrow Agent shall immediately return the Deposit to Purchaser without the need of further notice or instruction from

-10-

Seller or Purchaser. If Purchaser does not give such written notice within such fourteen (14) day period, this transaction shall be consummated as set forth in this Agreement, and Seller shall assign to Purchaser the Seller's portion of any condemnation award up to the amount of the Purchase Price. If, prior to the Closing, less than ten percent of the Property is taken under power of eminent domain, Purchaser shall close this transaction as set forth in this Agreement, and Seller shall assign to Purchaser Seller's portion of any condemnation award up to the amount of the Purchase Price.

### 13.     ADJUSTMENTS.

(a)     Closing Costs. Purchaser shall pay all fees and costs of the title company and any survey, title commitment or title insurance policy obtained by Purchaser in connection with this Agreement, all recording costs and any and all costs of any survey or reports commissioned by Purchaser. Seller shall pay all transfer, conveyance, sales or use taxes relating to the transfer of the Property. Notwithstanding anything above to the contrary, each party shall bear its own legal fees and costs arising in connection with the preparation and execution of this Agreement and consummation of the sale.

(b)     Prorations. Installment payments of special assessment liens, vault charges, sewer charges, utility charges and normally prorated operating expenses actually collected, billed or paid as of the Closing Date.

(c)     Taxes and Utilities. Real estate taxes and any other taxes or special assessments and utilities relating to the Property shall be prorated as of the Closing Date.

(d)     Any other costs or charges of closing this transaction not specifically mentioned in this Agreement shall be paid and adjusted in accordance with local custom in Middlesex County, New Jersey. This Section 14 shall survive the Closing for 90 days.

### 15.     DEFAULT AND DAMAGES.

(a)     The Purchaser shall be in default under this Agreement in the event that (i) the Purchaser shall fail to perform and comply with the agreements and conditions which are required to be performed or complied with by the Purchaser pursuant to this Agreement beyond any applicable cure periods or (ii) the warranties and representations contained herein shall not be true in all material respects on the Closing. If the Purchaser shall be in default under this Agreement beyond any applicable cure periods and the Seller is otherwise not in default under this Agreement, the Seller shall be entitled to retain the Deposit (with any interest) as liquidated damages and as its sole and exclusive remedy, and all other rights and liabilities of the parties hereto by reason of this Agreement shall be deemed at an end except for those obligations that specifically survive a termination of this Agreement. Seller and Purchaser agree that the Deposit is a fair and reasonable amount to be retained by Seller as agreed and liquidated damages in light of Seller's removal of the Property from the market and the costs incurred by Seller and shall not constitute a penalty or a forfeiture. Notwithstanding anything contained herein and notwithstanding, Seller hereby waives any right to pursue any other remedy at law or equity for such default of Purchaser, including, without limitation, any right to seek, claim or obtain loss of profits, punitive damages or consequential damages.

-11-

091431.000044.75353131

     (b)    The Seller shall be in default under this Agreement in the event that (i) the Seller shall fail to perform and comply with the agreements and conditions which are required to be performed or complied with by the Seller pursuant to this Agreement including terminate of the Wawa Lease prior to the Closing Date; or (ii) the warranties and representations of Seller contained herein shall not be true in all material respects on the Closing. If the Seller shall be in default under this Agreement, Purchaser may elect either to enforce Seller's obligations to convey the Property by an action for specific performance, or, to terminate this Agreement, obtain the return of the Deposit and obtain from Seller reimbursement for its actual, reasonable and direct due diligence and financing expenses, including reasonable attorney's fees, actually incurred, not to exceed Twenty-Five Thousand Dollars ($25,000.00), and neither Seller nor Purchaser shall have any further rights or obligations under this Agreement, except for those obligations that specifically survive a termination of this Agreement. Purchaser acknowledges that the mere fact that it is not satisfied with any due diligence it elects to conduct shall not be a basis for claiming a default by Seller. Notwithstanding anything contained herein and notwithstanding the remedy elected by Purchaser pursuant to this Section 15, Purchaser hereby waives any right to pursue any other remedy at law or equity for such default of Seller, including, without limitation, any right to seek, claim or obtain loss of profits, punitive damages or consequential damages.

    **16.**    <u>**INTENTIONALLY OMITTED**</u>.

    **17.**    <u>**INTENTIONALLY OMITTED**</u>.

    **18.**    <u>**BROKER**</u>. Each of Seller and Purchaser represents to the other that it has had no dealings, negotiations, or consultations with any broker, representative, employee, agent or other intermediary in connection with this Agreement or the sale of the Property other than Paramount Realty. (the "Broker") as the broker for Purchaser, who are recognized by the parties as the sole agents in effecting the transaction set forth herein. Purchaser shall be solely responsible to pay the Broker's commission which will be paid by Purchaser pursuant to a separate agreement. Seller and Purchaser shall each indemnify and hold the other free and harmless from all losses, damages, costs and expenses (including attorneys' fees) that either may suffer as a result of any claim or suit brought by any other broker or finder who claims that he participated with Seller or Purchaser, as the case may be, in this transaction. The provisions of this Section shall survive the Closing.

    **19.**    <u>**DOCUMENTS TO BE DELIVERED BY SELLER AT CLOSING**</u>. At the Closing, Seller shall deliver the following documents to Purchaser (collectively, "Seller's Conveyance Documents"):

     (a)    Bargain and Sale Deed in the form attached hereto as <u>Exhibit C</u> sufficient to convey to the Purchaser or its nominee good and marketable fee simple title to the Property, free from all encumbrances and defects other than the Permitted Encumbrances and which Deed shall also include a provision that for a period of ten (10) years from the date of the Closing, Purchaser may not lease the Property to any entity that is in both the convenience store business and fuel dispensing business without the express written consent of Wawa, Inc., or its successors and/ or assigns. The restrictive covenant shall inure solely for the benefit of Wawa, Inc., or its successors and/ or assigns;

       (b)     Checks to the order of the appropriate governmental authorities in amounts sufficient to pay the real estate conveyance taxes payable upon the recording of the Deed;

       (c)     Affidavits customarily required by title insurance companies in the State of New Jersey for the issuing of title insurance protecting against, inter alia, mechanics liens and parties in possession;

       (d)     An affidavit of the Seller stating that the Seller is not a "Foreign Person" as defined in Section 1445 (B)(2) of the Internal Revenue Code of 1986, as amended;

       (e)     A certification of the Seller certifying that all representations and warranties made by the Seller in this Agreement are true and correct as of the Closing, and that all of the Seller's covenants contained in this Agreement have been complied with;

       (f)     A settlement statement (the "Settlement Statement") in accordance with the terms hereof;

       (g)     a certified copy of the resolution of Seller evidencing authorization and approval of this Agreement and the transactions contemplated herein and such evidence of Seller's power and authority as Seller may reasonably require; and

       (h)     Such other and further documents customary for commercial real estate closings as may be reasonably requested by Purchaser to effect the transactions contemplated by this Agreement.

    **20.**    **DOCUMENTS AND OTHER ITEMS TO BE DELIVERED BY PURCHASER AT CLOSING.**  At the Closing, Purchaser shall deliver the following to Seller:

       (a)     the Purchase Price less any applicable adjustments;

       (b)     all other instruments and documents to which Seller may be entitled under any provision of this Agreement;

       (c)     a certification of the Purchaser certifying that all representations and warranties made by the Seller in this Agreement are true and correct as of the Closing, and that all of the Purchaser's covenants contained in this Agreement have been complied with;

       (d)     the Settlement Statement signed by Purchaser;

       (e)     a certified copy of the resolution of Purchaser evidencing authorization and approval of this Agreement and the transactions contemplated herein and such evidence of Purchaser's power and authority as Seller may reasonably require; and

       (f)     Such other and further documents customary for commercial real estate closings as may bc reasonably requested by Purchaser to effect the transactions contemplated by this Agreement.

-13-

**21.    NOTICES**.  Any notice required or permitted to be given hereunder shall be deemed to be given (i) when hand delivered or sent by electronic mail, (ii) when deposited in any post office or mail receptacle regularly maintained by the United States Government, certified or registered mail, return receipt requested, postage prepaid or (iii) one (1) business day after pickup by United Parcel Service, Federal Express or similar nationally recognized overnight express service, in either case addressed to the parties at their respective addresses referenced below or in each case to such other address as either party may from time to time designate by giving notice in writing to the other party.  Effective notice shall be deemed given only as provided in this Section.

| | |
|---|---|
| If to Seller: | PISCATAWAY CENTENNIAL DEVELOPER LLC |
| | 1195 Route 70 East |
| | Lakewood, New Jersey 08701 |
| | Attn: Maurice Zekaria |
| | E-mail:  mz@paramountrealty.com |
| | Telephone: 732-961-8112 |
| | Fax: 732-886-1690 |
| | |
| With a Copy to: | Ansell, Grimm & Aaron PC |
| | 1500 Lawrence Avenue |
| | Ocean, New Jersey 07712 |
| | Attn:  Jason S. Klein |
| | E-mail:  jklein@ansellgrimm.com |
| | Telephone: 732-643-5278 |
| | |
| If to Purchaser: | HH 88 Centennial LLC |
| | 1303 53 Street, PMB 12 |
| | Brooklyn, New York 11209 |
| | Attn:  Sholimy Reichman |
| | E-mail:  solreichman@gmail.com |
| | Telephone: 718-496-7126 |
| | |
| With a copy to: | Abrams Fensterman LLP |
| | 1 Metrotech Center |
| | Suite 1701 |
| | Brooklyn NY 11201 |
| | Attn: Anthony J. Carone, Esq. |
| | E-mail: acarone@abramslaw.com |
| | Telephone: 718-215-5300 |
| | Fax: 718-215-5304 |

**22.    ASSIGNMENT**.  This Agreement may not be assigned by Purchaser, without the prior written consent of Seller, which consent shall be at Seller's sole discretion except that Purchaser shall have the right to assign this Agreement without Seller's consent to any corporation, partnership, limited partnership or limited liability company controlled by, controlling or under common control with Purchaser.  No assignment of this Agreement shall relieve the Purchaser from

-14-

any responsibilities or liabilities hereunder, and Purchaser and its assignee shall thereafter be jointly and severally liable hereunder.

**23.    NO SURVIVAL OF REPRESENTATIONS AND WARRANTIES**.   Unless otherwise expressly herein stated to survive, all other representations, covenants, indemnities, conditions and agreements contained herein shall be superseded by the various documents executed and delivered at Closing and shall not survive the Closing.   Seller shall have no liability to Purchaser after Closing for any matter disclosed by Seller in writing to Purchaser or actually learned by Purchaser prior to Closing despite Purchaser elected to proceed to Closing, including, without limitation, any matter that Purchaser is deemed to have knowledge of pursuant to Section 16 above.

**24.    TIME OF THE ESSENCE**.   The parties agree that any rule of law or equity to the contrary notwithstanding, time is of the essence of this Agreement and to all dates and time periods ·
set forth herein so far as the rights and interests of the parties are concerned.

**25.    WAIVER OF NOTICE AND HEARING PRIOR TO PRE-JUDGMENT REMEDY**.   PURCHASER AND SELLER ACKNOWLEDGE THAT THIS AGREEMENT CONSTITUTES A COMMERCIAL TRANSACTION AND EACH HEREBY WAIVES ALL RIGHTS TO NOTICE AND PRIOR COURT HEARING, OR AS OTHERWISE ALLOWED BY THE LAW OF ANY STATE OR FEDERAL LAW WITH RESPECT TO ANY AND ALL PREJUDGMENT REMEDIES EITHER PARTY MAY DESIRE TO EMPLOY TO ENFORCE ITS RIGHTS AND REMEDIES UNDER THIS AGREEMENT.

**26.    WAIVER OF RIGHT TO JURY TRIAL.**   PURCHASER AND SELLER HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVE ANY RIGHT SUCH PARTY MAY HAVE TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING OF ANY KIND OR NATURE, IN ANY COURT IN WHICH AN ACTION MAY BE COMMENCED, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT AND/OR THE PROPERTY, OR BY REASON OF ANY OTHER CAUSE OR DISPUTE WHATSOEVER BETWEEN SELLER AND PURCHASER OF ANY KIND OR NATURE.

**27.    MISCELLANEOUS.**

(a)    Entire Agreement.   This Agreement, together with the exhibits attached hereto, all of which are incorporated by reference, is the entire agreement between the parties with respect to the subject matter hereof, and no alteration, modification or interpretation hereof shall be binding unless in writing and signed by both parties.

(b)    Severability.   If any provision of this Agreement or application to any party or circumstances shall be determined by any court of competent jurisdiction to be invalid and unenforceable to any extent, the remainder of this Agreement or the application of such provision to such person or circumstances, other than those as to which it is so determined invalid or unenforceable, shall not be affected thereby, and each provision hereof shall be valid and shall be enforced to the fullest extent permitted by law.

(c)    Applicable Law.   This Agreement shall be construed and enforced in accordance with the laws of the State of New Jersey.

-15-

        (d)     Successors Bound.  This Agreement shall be binding upon and inure to the benefit of Purchaser and Seller and their successors and permitted assigns.

        (e)     Captions.  The captions in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this Agreement or the scope or content of any of its provisions.

        (f)     Attorneys' Fees.  In the event of any litigation arising out of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs.

        (g)     No Partnership.  Nothing contained in this Agreement shall be construed to create a partnership or joint venture between the parties or their successors in interest.

        (h)     Counterparts and PDFs.  This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same instrument. Facsimile and PDF copies of signatures shall be afforded the full force and effect of any original signature

        (i)     Recordation.  Purchaser and Seller agree not to record this Agreement or any memorandum hereof.

        (j)     Merger.  Except as otherwise expressly provided herein, Purchaser's acceptance of the Deed shall be deemed a discharge of all of the obligations of Seller hereunder.

        (k)     As used in this Agreement, "Business Day" shall be deemed to be any day other than a day on which banks in the State of New Jersey shall be permitted or required to close. If the final date of any period which is set out in any provision of this Agreement falls on a Saturday, Sunday or legal holiday under the laws of the United States or the State of New Jersey, then the time of such period shall be extended to the next date which is not a Saturday, Sunday or legal holiday.

## 28.    **ESCROW PROVISIONS**

        (a)     Escrow Agent shall not be bound in any way by any other agreement or contract between Seller and Purchaser, whether or not Escrow Agent has knowledge thereof. Escrow Agent's only duties and responsibilities with respect to the Deposit shall be to hold the Deposit and other documents delivered to it as agent and to dispose of the Deposit and such documents in accordance with the terms of this Agreement.  Without limiting the generality of the foregoing, Escrow Agent shall have no responsibility to protect the Deposit and shall not be responsible for any failure to demand, collect or enforce any obligation with respect to the Deposit or for any diminution in value of the Deposit from any cause, other than Escrow Agent's gross negligence or willful misconduct Escrow Agent may, at the expense of Seller and Purchaser, consult with counsel and accountants in connection with its duties under this Agreement.  Escrow Agent shall not be liable to the parties hereto for any act taken, suffered or permitted by it in good faith in accordance with the advice of counsel and accountants.  Escrow Agent shall not be obligated to take any action hereunder that may, in its reasonable judgment, result in any liability to it unless Escrow Agent shall have been furnished with reasonable indemnity satisfactory in amount, form and substance to Escrow Agent

-16-

(b) Escrow Agent is acting as a stakeholder only with respect to the Deposit. If there is any dispute as to whether Escrow Agent is obligated to deliver the Deposit or as to whom the Deposit is to be delivered, Escrow Agent shall not make any delivery, but shall hold the Deposit until receipt by Escrow Agent of an authorization in writing, signed by all the parties having an interest in the dispute, directing the disposition of the Deposit, or, in the absence of authorization, Escrow Agent shall hold the Deposit until the final determination of the rights of the parties in an appropriate proceeding. Escrow Agent shall have no responsibility to determine the authenticity or validity of any notice, instruction, instrument, document or other item delivered to it, and it shall be fully protected in acting in accordance with any written notice, direction or instruction given to it under this Agreement and believed by it to be authentic. If written authorization is not given, or proceedings for a determination are not begun, within thirty (30) days after the date scheduled for the closing of title and diligently continued, Escrow Agent may, but is not required to, bring an appropriate action or proceeding for leave to deposit the Deposit with a court of the State of New Jersey pending a determination. Escrow Agent shall be reimbursed for all costs and expenses of any action or proceeding, including, without limitation, attorneys' fees and disbursements incurred in its capacity as Escrow Agent, by the party determined not to be entitled to the Deposit. Upon making delivery of the Deposit in the manner provided in this Agreement, Escrow Agent shall have no further liability hereunder. In no event shall Escrow Agent be under any duty to institute, defend or participate in any proceeding that may arise between Seller and Purchaser in connection with the Deposit.

(c) Escrow Agent may resign as escrow agent at any time upon fifteen (15) days written notice to Seller and Purchaser. Seller and Purchaser may remove Escrow Agent as escrow agent at any time upon five (5) days written notice to Escrow Agent, signed by both Seller and Purchaser. In the event of Escrow Agent's resignation or removal, Escrow Agent's only duty until a successor escrow agent is appointed shall be to hold and dispose of the Deposit, together with all interest earned thereon, and any documents delivered to Escrow Agent by Seller or Purchaser, in accordance with the provisions of this Agreement existing at the time of such resignation or removal, and the Escrow Agent shall not be bound by any notices, requests, instructions, or demands received thereafter.

(d) Any other deposits held by other parties shall immediately be forwarded to Escrow Agent to be held under the same conditions.

(e) Seller and Purchaser agree to enter into any additional documentation reasonably requested by Escrow Agent in connection with the Escrow Agent's duties hereunder and/or the Deposit.

[REMAINDER OF PAGE INTENTIONALLY BLANK; SIGNATURES ON FOLLOWING PAGE]

-17-

091431.000044.75353131

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the Effective Date.

SELLER:

**PISCATAWAY CENTENNIAL DEVELOPER LLC**

By: _____

Name:

Its:

PURCHASER:

**HH 88 CENTENNIAL LLC**

By: _____

Name:    Shloimy Reichman

Its:        Authorized Signatory

Agreed and Accepted by Escrow Agent:

By: _____

Name:

Its:

Date:

-18-

091431.000044.75353131

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the Effective Date.

SELLER:

**PISCATAWAY CENTENNIAL DEVELOPER LLC**

By: _____

Name: Maurice Zekaria

Its: Managing Member

PURCHASER:

**HH 88 CENTENNIAL LLC**

By: _____

Name:

Its:

Agreed and Accepted by Escrow Agent:

By: _____

Name: Akiva Shepard

Its: New Jersey Counsel

Date: May 26, 2022

-18-

## EXHIBIT A

## DESCRIPTION OF PROPERTY

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Piscataway, County of Middlesex, State of New Jersey.

BEGINNING at a point in the southeasterly side line of Centennial Avenue (80.00 feet wide right of way), said point being South 64 degrees 00 minutes 00 seconds West, a distance of 178.94 feet from a point formed by the intersection of the said southeasterly side line of Centennial Avenue with the northerly side line of River Road (a.k.a. New Jersey State Highway Temporary Route 18, a.k.a. Middlesex County Route 514 - 99.00 feet wide right of way) if said side lines were extended from said beginning point, and running; thence

1. Along the southeasterly side line of Centennial Avenue, North 64 degrees 00 minutes 00 seconds East, a distance of 465.25 feet to a point; thence

2. Along the dividing line between Lots 8 & 7, Block 504, South 26 degrees 00 minutes 00 seconds East, a distance of 488.71 feet to a point; thence

3. Along the common dividing line between Lot 8, Block 504 and Lots 3, 2 & 1, Block 505, South 65 degrees 36 minutes 50 seconds West, a distance of 287.38 feet to a point on the aforementioned northerly side line of River Road; thence

4. Along the northerly side line of River Road, North 62 degrees 36 minutes 00 seconds West, a distance of 419.70 feet to a point of curvature; thence

5. Along a curve to the right, having a radius of 90.00 feet, turning a central angle of 126 degrees 35 minutes 54 seconds with an arc length of 198.86 feet, the chord which bears North 00 degrees 41 minutes 57 seconds East, a chord distance of 160.81 feet to the point and place of BEGINNING.

BEING further known and described as follows:

BEGINNING at a point in the southeasterly side line of Centennial Avenue (80.00 feet wide right of way), said point being South 62 degrees 10 minutes 34 seconds East, a distance of 178.94 feet from a point formed by the intersection of the said southeasterly side line of Centennial Avenue with the northerly side line of River Road (a.k.a. Middlesex County Route 622) (a.k.a Middlesex County Route 514 per tax map) (99.00 feet wide right of way per tax map) if said side lines were extended from said beginning point, and running; thence

1. Along the southeasterly side line of centennial avenue, North 52 degrees 10 minutes 34 seconds East, a distance of 465.25 feet to a point; thence

2. Along dividing line between Tax Lots 7 & 8, Block 6703, South 37 degrees 49 minutes 26 seconds East, a distance of 488.71 feet to a point, passing over a rebar found 5.2 feet from the beginning of this course; thence

3. Along the common dividing line between Lot 8, Block 6801 and Lots 3, 2 & 1, Block 6801, South 53 degrees 47 minutes 24 seconds West, a distance of 287.38 feet to a point on the aforementioned northerly side line of River Road, passing over a rebar found 30.5 feet from the beginning of this course; thence

4. Along the northerly side line of River Road, North 74 degrees 25 minutes 26 seconds West, a distance of 419.70 feet to a point of curvature; thence

5. Along a curve to the right, having a radius of 90.00 feet, turning a central angle of 126 degrees 36 minutes 00 seconds with an arc length of 198.86 feet, the chord which bears North 11 degrees 07 minutes 26 seconds West, a chord distance of 160.81 feet to the point and place of BEGINNING.

NOTE FOR INFORMATION: Being the following lot(s) in the Township of Piscataway, County of Middlesex: Lot 8, Block 504

091431.000044.75353131

<u>EXHIBIT B</u>

PROPERTY DOCUMENTS

1.      Copies of any agreements, contracts, warranties and commitments affecting the Property, its ownership, management or operations, which could not or would not be cancelled by Seller prior to Closing;

2.      Copies of any prior title reports, surveys, plans, specifications, engineering plans and studies, architectural drawings, physical condition reports, floor plans and other plans for the Property;

3.      Copies of any certificates of occupancy and all other licenses and permits for the Property required by law and issued by any governmental authorities having jurisdiction over the Property;

4.      Copies of the most recent income and expense statements, tax bills covering the Property and any notices of reassessment; and

5.      Copies of any environmental and soil reports regarding the Property.

091431.000044.75353131

EXHIBIT C

BARGAIN AND SALE DEED

EXHIBIT "B"

# AG&A | ANSELL GRIMM & AARON PC

COUNSELORS AT LAW

1500 LAWRENCE AVENUE
CN7807
OCEAN, NEW JERSEY 07712
732-922-1000
732-922-6161 (FAX)

365 RIFLE CAMP ROAD
WOODLAND PARK, NEW JERSEY 07424
973-247-9000
973-247-9199 (FAX)

214 CARNEGIE CENTER
SUITE 112
PRINCETON, NEW JERSEY 08540
609-751-5551

140 GRAND STREET
SUITE 705
WHITE PLAINS, NEW YORK 10601
800-569-3886

41 UNIVERSITY DRIVE
SUITE 400
NEWTOWN, PENNSYLVANIA 18940
267-757-8792

www.ansellgrimm.com

JAMES G. AARON
ALLISON ANSELL ◇ †
BRIAN E. ANSELL ‡
MITCHELL J. ANSELL
RICHARD B. ANSELL ‡
JOSHUA S. BAUCHNER ♦
MICHAEL V. BENEDETTO
RICK BRODSKY ♦
DAVID J. BYRNE □
PETER S. FALVO, JR.
PETER B. GRIMM
ROBERT A. HONECKER, JR. □ §
JASON S. KLEIN ♦
JENNIFER S. KRIMKO
DONNA L. MAUL ♦
LAWRENCE H. SHAPIRO ♦ □
DAVID B. ZOLOTOROFE

EDWARD J. AHEARN
ELYSA D. BERGENFELD
KRISTINE M. BERGMAN ♦
BARRY M. CAPP ♦ △
ALFRED M. CASO
KEVIN M. CLARK
ANTHONY J. D'ARTIGLIO ♦
DOUGLAS A. DAVIE ♦
COURTNEY E. DUNN ♦
CRAIG D. GOTTILLA ♦ □
NICOLE D. MILLER □
RAHOOL PATEL ♦
FREDERICK C. RAFFETTO ~
SETH M. ROSENSTEIN ♦
PRISCILLA SAINT-LAURENT
MELANIE J. SCROBLE
TARA K. WALSH ♦
ANDREA B. WHITE ♦ ♦
ASHLEY V. WHITNEY ♦
ZACHARY L. WINDHAM ~ ^ ■ ♦
JESSICA T. ZOLOTOROFE

COUNSEL
HON. ANTHONY J. MELLACI, JR., J.S.C. (RET)
STACEY R. PATTERSON ♦
JAMES A. SYLVESTER
ROY W. HIBBERD △ ∇
HON. RAYMOND A. HAYSER, J.T.C. (RET)
GEORGE A. MCGOWAN III
NICHOLAS J. FALCONE ♦

RETIRED
ROBERT I. ANSELL
LISA GOLDWASSER ♦

IN MEMORIAM
LEON ANSCHELEWITZ (1929-1986)
MAX M. BARR (1929-1993)
MILTON M. ABRAMOFF (1935-2004)
DAVID K. ANSELL† (1962-2019)

LICENSED ALSO IN:
△ D.C. ❖ MASS. ♦ N.Y. ' WASH.
□ PENN. FLA.  ∇CALIF. ▲ CO OR

† FELLOW, AMERICAN
ACADEMY OF MATRIMONIAL
LAWYERS

‡ CERTIFIED BY THE SUPREME
COURT OF NEW JERSEY AS A
CIVIL TRIAL ATTORNEY

§ CERTIFIED BY THE SUPREME
COURT OF NEW JERSEY AS A
CRIMINAL TRIAL ATTORNEY

♦ CERTIFIED BY THE SUPREME
COURT OF NEW JERSEY AS A
MATRIMONIAL LAW ATTORNEY

Direct Dial; (732) 643-5277
Direct E-Mail:  jklein@ansellgrimm.com

August 3, 2022

VIA E-MAIL:  solreichman@gmail.com
AND CERTIFIED MAIL,RRR#70212720000200143036
HH 88 Centennial LLC
1303 53 Street, PMB 12
Brooklyn, New York 11209
Attn:  Sholimy Reichman

VIA E-MAIL: acarone@abramslaw.com
AND CERTIFIED MAIL, RRR#70212720000200143029
Abrams Fenterman LLP
1 Metrotech Center
Suite 1701
Brooklyn, New York 11201
Attn:  Anthony J. Carone, Esq.

RE:   88 Centennial Avenue, Piscataway, New Jersey
Our File No.  91431-44

Dear Gentlemen:

As you are aware, we represent Pisacataway Centennial Developer LLC ("Seller") in connection with the above-referenced property.

In accordance with the Purchase and Sale Agreement by and between Seller and HH 88 Centennial LLC ("Purchaser") executed in May 2022 (the "Agreement"), the parties were to close

091431.000044 79133742 A commitment to excellence. A commitment to people. Since 1929.

Page 2
August 3, 2022

title on or before fifteen (15) days after the expiration of the Review Period.  Accordingly, closing was to take place on or before August 1, 2022.  Complying with the Agreement, Seller delivered to the title company, in escrow, the documents necessary to convey title to the property.

As you know, closing did not take place on or before August 1, 2022, despite Seller having been ready, willing and able to close.  Notwithstanding our prior inquiries, Purchaser has not advised as to whether it intends to proceed with the transaction contemplated by the Agreement, and has not raised any basis for its failure to close.

As Purchaser defaulted under the terms of the Agreement, in accord with Section 15(a) of the Agreement, "Seller [is] entitled to retain the Deposit (with any interest) as liquidated damages…"  Accordingly, by copy of this letter Riverside Abstract as escrow agent is directed to immediately wire the $500,000.00 deposit to Seller's counsel utilizing the wire instructions annexed hereto.  In the event Purchaser objects to releasing the deposit, Seller will initiate an action for declaratory judgment and all attorneys' fees and costs attendant to bringing the action in accord with Section 27(f) of the Agreement.

Seller reserves all of its rights and remedies, at law and in equity, and nothing herein shall be deemed a waiver of those rights.

Very truly yours,

JASON S. KLEIN
A Member of the Firm

JK/mkw
cc:    Piscataway Centennial Developer LLC, Attn:  Maurice Zekaria
       Riverside Abstract, Attn:  Shaul C. Greenwald, Esq., sgreenwald@rsabstract.com
       Seth M. Rosenstein, Esq.

091431.000044 7913332v1



EXHIBIT "C"



Brooklyn
1 MetroTech Center, Suite 1701
Brooklyn, NY 11201
718.215.5300 ⎸ P
info@abramslaw.com ⎸ E

Long Island · Brooklyn · White Plains · Rochester · Albany · Manhattan

August 5, 2022

Via Email and Certified Mail

Piscataway Centennial Developer LLC
1195 Route 70 East
Lakewood, New Jersey 08701
Attn: Maurice Zekaria
mz@paramountrealty.com

Ansell, Grimm & Aaron PC
1500 Lawrence Avenue
Ocean, New Jersey 07712
Attn: Jason S. Klein
jklein@ansellgrimm.com

 ·Re: 88 Centennial Avenue, Piscataway, New Jersey (the "Property")

To whom it may concern:

Reference is hereby made to that certain Purchase and Sale Agreement entered into as of May 18, 2022 ("PSA") concerning the Property. All capitalized terms herein not otherwise defined shall have those meanings ascribed to them in the PSA.

It has come to Purchaser's attention that it appears that the Property is or may be encumbered by certain unrecorded development and use restrictions ("Restrictions") which Restrictions appear to preclude Purchaser's repeatedly expressed plans to develop a warehouse on the Property. It appears that these Restrictions have resulted from what appear to be undisclosed and unrecorded prior dealings between Seller and the Township of Piscataway. It further appears that these Restrictions constitute a title defect under PSA § 5(a). Pursuant to PSA §§ 4(e), 5, and 9, Seller must cure, discharge, or terminate such Restrictions or agree in writing to cure, discharge, or terminate such Restrictions.

To the extent not already provided by Purchaser, this letter shall serve as a Title Notice under PSA § 5(b) or a Second Title Notice under § 5(c).

This letter is sent without waiver and with full reservation of all rights in law and equity.

Sincerely,

Anthony J. Carone, Esq.

cc:     HH 88 Centenial LLC, Attn: Sholimy Reichman
        Riverside Abstract, Attn: Shaul C. Greenwald, Esq., sgreenwald@rsabstract.com

EXHIBIT "D"



**Brooklyn**
1 MetroTech Center, Suite 1701
Brooklyn, NY 11201
718.215.5300 | P
info@abramslaw.com | E

ABRAMS | FENSTERMAN, LLP

ATTORNEYS AT LAW     Long Island · Brooklyn · White Plains · Rochester · Albany · Manhattan

August 5, 2022

Via Email and Certified Mail

Piscataway Centennial Developer LLC
1195 Route 70 East
Lakewood, New Jersey 08701
Attn: Maurice Zekaria
mz@paramountrealty.com

Ansell, Grimm & Aaron PC
1500 Lawrence Avenue
Ocean, New Jersey 07712
Attn: Jason S. Klein
jklein@ansellgrimm.com

Re: 88 Centennial Avenue, Piscataway, New Jersey (the "Property")

To whom it may concern:

Reference is hereby made to that certain Purchase and Sale Agreement entered into as of May 18, 2022 ("PSA") concerning the Property. All capitalized terms herein not otherwise defined shall have those meanings ascribed to them in the PSA.

Purchaser is in receipt of a certain letter dated July 26, 2022, in which Seller states that it was somehow notified that Purchaser "does not intent to proceed with the" purchase of the Property. Purchaser previously responded to this letter by emails on July 29 and August 4, 2022. As stated, Seller's understanding is incorrect. Purchaser never notified Seller that it does intend to proceed with the purchase. Purchaser again rejects such a claimed default predicated on Seller's misunderstanding and objects to any claimed entitlement to disbursement of the Deposit.

Purchaser fully intends to proceed with purchase of the Property. However, Seller is not, and will not be at Closing, ready, willing, and able to fulfil its obligations under the PSA because, among other things, the Wawa Lease is not terminated. According to PSA § 1, "[t]he Wawa Lease…shall be terminated." Seller must terminate the Wawa Lease and provide Purchaser with "a written acknowledgement" of such termination. PSA § 1. If "the Wawa Lease is not terminated prior to Closing," then, at Purchaser's option, among other remedies and ramifications, "Purchaser shall…receive a refund of the Deposit." PSA §§ 1 and 3(a). Accordingly, Purchaser demands that Seller forthwith terminate the Wawa Lease and provide Purchaser written notice of the same within

five (5) days hereof.  Please note that Seller's failure to do so shall constitute a default under the PSA.

This letter is sent without waiver and with full reservation of all rights in law and equity.

Sincerely,

Anthony J. Carone, Esq.

cc:    HH 88 Centenial LLC, Attn: Sholimy Reichman
       Riverside Abstract, Attn: Shaul C. Greenwald, Esq., sgreenwald@rsabstract.com

# EXHIBIT "E"

# AG&A | ANSELL GRIMM & AARON PC

### COUNSELORS AT LAW

365 RIFLE CAMP ROAD
WOODLAND PARK, NEW JERSEY 07424
973-247-9000
973-247-9199 (FAX)

1500 LAWRENCE AVENUE
CN7807
OCEAN, NEW JERSEY 07712
732-922-1000
732-922-6161 (FAX)

214 CARNEGIE CENTER
SUITE 112
PRINCETON, NEW JERSEY 08540
609-751-5551

140 GRAND STREET
SUITE 705
WHITE PLAINS, NEW YORK 10601
800-569-3886

41 UNIVERSITY DRIVE
SUITE 400
NEWTOWN, PENNSYLVANIA 18940
267-757-8792

www.ansellgrimm.com

RICHARD B. ANSELL ‡
PETER S. FALVO, JR.
JAMES G. AARON
PETER B. GRIMM
MITCHELL J. ANSELL
BRIAN E. ANSELL‡
ALLISON ANSELL•†
MICHAEL V. BENEDETTO
DAVID B. ZOLOTOROFE
DONNA L. MAUL•
RICK BRODSKY•
LAWRENCE H. SHAPIRO•□
ROBERT A. HONECKER, JR. □§
JENNIFER S. KRIMKO
FREDERICK C. RAFFETTO~
JOSHUA S. BAUCHNER•
DAVID J. BYRNE□
ANDREA B. WHITE •▪
EDWARD J. AHEARN

JASON S. KLEIN•
MELANIE J. SCROBLE
BARRY M. CAPP•△
DOUGLAS A. DAVIE•
ELYSA D. BERGENFELD
RICHARD B. LINDERMAN□
CRAIG D. GOTTILLA •□
KEVIN M.CLARK
KRISTINE M. BERGMAN□
JESSICA T. ZOLOTOROFE
TARA K. WALSH•
RAHOOL PATEL•
NICOLE D. MILLER□
ALFRED M. CASO
ANTHONY J. D'ARTIGLIO•
SETH M. ROSENSTEIN•
ASHLEY V. WHITNEY •
COURTNEY E. DUNN •

COUNSEL
HON. ANTHONY J. MELLACI, JR., J.S.C. (RET)
STACEY R. PATTERSON•
JAMES A. SYLVESTER
ROY W. HIBBERD V△
HON. RAYMOND A. HAYSER, J.T.C. (RET)
KELLY M. CAREY

RETIRED
ROBERT I. ANSELL
LISA GOLDWASSER•

IN MEMORIAM
LEON ANSCHELEWITZ (1929-1986)
MAX M. BARR (1929-1993)
MILTON M. ABRAMOFF (1935-2004)
DAVID K. ANSELL† (1962-2019)

LICENSED ALSO IN:
△ D.C. ◦ MASS. • N.Y. * WASH.
□ PENN. ~ FLA. ▽ CALIF.

† FELLOW, AMERICAN
ACADEMY OF MATRIMONIAL
LAWYERS

‡ CERTIFIED BY THE SUPREME
COURT OF NEW JERSEY AS A
CIVIL TRIAL ATTORNEY

§ CERTIFIED BY THE SUPREME
COURT OF NEW JERSEY AS A
CRIMINAL TRIAL ATTORNEY

• CERTIFIED BY THE SUPREME
COURT OF NEW JERSEY AS A
MATRIMONIAL LAW ATTORNEY

**Reply to: Woodland Park**
**Telephone: (973) 247-9000**
**Fax: (973) 247-9199**
**E-mail:  smr@ansellgrimm.com**

August 9, 2022

**Via Regular and Electronic Mail to:**
**ACarone@abramslaw.com**

Anthony J. Carone, Esq.
Abrams Fensterman, LLP
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201

Re:     88 Centennial Avenue, Piscataway, New Jersey

Dear Mr. Carone:

As you know, this office represents Piscataway Centennial Developer LLC ("Seller") in connection with the above-referenced property.  Please accept this correspondence in response to your letters, both dated August 5, 2022.

First, Seller is ready, willing and able to close on this transaction and remains able to unilaterally terminate the Wawa Lease in accord with its provisions and will do so prior to closing. Seller has endeavored to mitigate its damages by not terminating the Wawa Lease until it is confirmed that Purchaser will proceed in accord with its obligation to close.

094523.000000.73980122

091431.000044 7919651v2

Anthony J. Carone, Esq.
Abrams Fensterman, LLP
August 9, 2022
Page 2

      Second, your correspondence raises the issue of purported unrecorded encumbrances or restrictions.  As you well know, Purchaser had ample time to review title work for the Property, and was permitted a period through and including "5:00 PM EST on the last day of the Review Period (the "Title Date") to notify Seller, in writing, of the existence of any encumbrances and defects in title which are not Permitted Encumbrances and not otherwise excepted in this Agreement (the "Title Notice")."  *See* PSA Section 5(b).  The PSA is clear that if Purchaser failed to deliver a Title Notice to Seller by 5:00 PM EST on the Title Date, the title contingency is deemed to be of no further force or effect and all of the matters of record as of the Title Date are deemed "Permitted Encumbrances."  As the Title Date was July 25, 2022, and no ***timely*** Title Notice was provided, to the extent the unrecorded development and use restrictions constitute matters of title for which Section 5 of the PSA would apply, Purchaser waived any challenge to title and its purported unwillingness to close on that basis is a nullity, at best.  For the avoidance of doubt, the untimely "Title Notice" is rejected.

      Third, in the event Purchaser fails to timely close, in breach of its obligations under the PSA, it will have surrendered the security deposit in accord with Section 3(a) of the Agreement.  In light of the anticipatory breach by Purchaser, Seller has endeavored to mitigate its damages by not terminating the Wawa Lease until it is confirmed that Purchaser will proceed in accord with its obligation to close.  *See Ross Systems v. Linden Dari Delite, Inc.*, 35 N.J. 329 (1961)("An anticipatory breach is a definite and unconditional declaration by a party to an executory contract -- through word or conduct -- that he will not or cannot render the agreed upon performance.  If the breach is material, *i.e.*, goes to the essence of the contract, the non-breaching party may treat the contract as terminated and refuse to render continued performance.").

      In light of these facts, Seller demands that Purchaser confirm that it will immediately provide executed closing documents to Riverside Abstract and closing funds to be held in escrow pending confirmation that Seller terminated the Wawa Lease.  In the event Purchaser fails to comply and the transaction is not closed on or before **Friday, August 12, 2022**, Seller will initiate an action for declaratory judgment and all attorneys' fees and costs attendant to bringing the action in accord with Section 27(f) of the Agreement.

      Seller reserves all of its rights and remedies, at law and in equity, and nothing herein shall be deemed a waiver of those rights.

      Thank you for your prompt attention to this matter.

094523.000000.73980122

091431.000044 7919651v2

Anthony J. Carone, Esq.
Abrams Fensterman, LLP
August 9, 2022
Page 3

Very truly yours,

Seth M. Rosenstein, Esq.

094523.000000.73980122

091431.000044 7919651v2

# EXHIBIT B

**ANSELL GRIMM & AARON, P.C.**
Joshua S. Bauchner, Esq. (#051242013)
Seth M. Rosenstein, Esq. (#156862015)
365 Rifle Camp Road
Woodland Park, NJ 07424
(973) 247-9000
smr@ansellgrimm.com

*Attorneys for Plaintiff*

| | |
|---|---|
| PISCATAWAY CENTENNIAL DEVELOPER LLC, | SUPERIOR COURT OF NEW JERSEY MIDDLESEX COUNTY – LAW DIVISION CIVIL ACTION |
| Plaintiff, | DOCKET NO.: MID-L-4144-22 |
| vs. | |
| HH 88 CENTENNIAL LLC, | **<u>ACCEPTANCE OF SERVICE</u>** |
| Defendant. | |

Service of the summons and complaint in the above-captioned action on behalf of HH 88 Centennial LLC is hereby accepted as of August 19, 2022 without waiver of any defenses except those regarding service of process.

ABRAMS FENSTERMAN, LLP

By:   /s/ Zachary Kuperman

Zachary Kuperman, Esq.
1 Metrotech Center, Suite 1701
Brooklyn, New York 11201
(718) 215-5300
ZKuperman@Abramslaw.com

1

69783351

091431.000071 7943260v1

# EXHIBIT C

MIDDLESEX VICINAGE CIVIL DIVISION
P O BOX 2633
56 PATERSON STREET
NEW BRUNSWICK    NJ 08903-2633

                                    TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (732) 645-4300
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:   AUGUST 16, 2022
                    RE:     PISCATAWAY CENTENNIA L DEVELOP  VS HH 88 CENTENNI
                    DOCKET: MID L -004144 22


     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 1.

     DISCOVERY IS   150 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.


     THE PRETRIAL JUDGE ASSIGNED IS:  HON ALBERTO RIVAS


      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM       003
AT:  (732) 645-4300 EXT 88371.


     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:
                              ATT: SETH M. ROSENSTEIN
                              ANSELL GRIMM & AARON PC
                              365 RIFLE CAMP RD
                              WOODLAND PARK    NJ 07424


ECOURTS

# EXHIBIT D

# Case Summary

**Case Number:** MID L-004144-22

**Case Caption:** Piscataway Centennia L Develop  Vs Hh 88 Centenni

| | | |
|---|---|---|
| **Court:** Civil Part | **Venue:** Middlesex | **Case Initiation Date:** 08/16/2022 |
| **Case Type:** Real Property | **Case Status:** Active | **Jury Demand:** 6 Jurors |
| **Case Track:** 1 | **Judge:** Alberto Rivas | **Team:** 3 |
| **Original Discovery End Date:** | **Current Discovery End Date:** | **# of DED Extensions:** 0 |
| **Original Arbitration Date:** | **Current Arbitration Date:** | **# of Arb Adjournments:** 0 |
| **Original Trial Date:** | **Current Trial Date:** | **# of Trial Date Adjournments:** 0 |
| **Disposition Date:** | **Case Disposition:** Open | **Statewide Lien:** |

## Plaintiffs

**Piscataway Centennial Develop AKA  Piscataway Centennial Developer Llc**

| | | |
|---|---|---|
| **Party Description:** Business | | **Attorney Name:** Seth Michael Rosenstein |
| **Address Line 1:** 1195 Route 70 East | **Address Line 2:** | **Attorney Bar ID:** 156862015 |
| **City:** Lakewood        **State:** NJ | **Zip:** 08701 | **Phone:** |
| **Attorney Email:** SMR@ANSELLGRIMM.COM | | |

## Defendants

**Hh 88 Centennial Llc**

| | | |
|---|---|---|
| **Party Description:** Business | | **Attorney Name:** |
| **Address Line 1:** 1 Metrotech Center | **Address Line 2:** Suite 170 | **Attorney Bar ID:** |
| **City:** Brooklyn        **State:** NY | **Zip:** 11201 | **Phone:** |
| **Attorney Email:** | | |

## Case Actions

| Filed Date | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|
| 08/16/2022 | Complaint with Jury Demand for MID-L-004144-22 submitted by ROSENSTEIN, SETH MICHAEL, ANSELL GRIMM & AARON PC on behalf of PISCATAWAY CENTENNIAL DEVELOP against HH 88 CENTENNIAL LLC | LCV20222972214 | 08/16/2022 |
| 08/17/2022 | TRACK ASSIGNMENT Notice submitted by Case Management | LCV20222973877 | 08/17/2022 |
| 08/25/2022 | ACKNOWLEDGEMENT OF SERVICE submitted by ROSENSTEIN, SETH, MICHAEL of ANSELL GRIMM & AARON PC on behalf of PISCATAWAY CENTENNIAL DEVELOPER LLC against HH 88 CENTENNIAL LLC | LCV20223089658 | 08/25/2022 |